# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3916 | **DATE** | 3/11/2003 |
| **CASE TITLE** | Carroccia vs. Michael Anderson | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court grants defendants' motions to dismiss (20-1 and 26-1) as to Counts 3 and 4 of the amended complaint. The motions are otherwise denied. Defendants are ordered to answer the remaining claims on or before 3/25/03.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| OR | courtroom deputy's initials | | | | |
| | | | | mailing deputy initials | |

U.S. DISTRICT COURT
CLERK
03 MAR 12 PM 5:40
FILED

MAR 12 2003

date/time received in
central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOHN CARROCCIA,                          )
                                         )
                Plaintiff,               )
                                         )
        vs.                              )    Case No. 02 C 3916
                                         )
MICHAEL ANDERSON; TOM                    )
BUMGARNER; RONALD MALLOY;                )
TOM ATKINSON; JOHN ROGULA;               )
KANE COUNTY, ILLINOIS; and               )
VILLAGE OF HAMPSHIRE, ILLINOIS,          )
                                         )
                Defendants.              )

DOCKETED
MAR 1 3 2003

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

John Carroccia was arrested and charged with the murder of Gregory Sears, a Sergeant in the Hampshire, Illinois Police Department. He was tried and acquitted. Carroccia now brings suit in this Court seeking redress for violations of his constitutional rights that he claims occurred during the police investigation of Sears' murder and his trial for that crime. Carroccia asserts claims under 42 U.S.C. § 1983 and state law against Hampshire police officers Thomas Atchison and Ronald Malloy; Kane County Sheriff's Office investigators Michael Anderson and Tom Bumgarner; John Rogula, a prosecution witness during the murder trial; Kane County; and the Village of Hampshire. Defendants have moved to dismiss for failure to state a claim.

### Plaintiff's allegations

The relevant facts alleged in Carroccia's amended complaint, and regarded as true for purposes of this motion, *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th

Cir. 2002), are as follows. On June 1, 2000, John Carroccia was fifty years old. He had no record of felony arrests or convictions. Carroccia and Gregory Sears, a Sergeant of the Hampshire Police Department, had grown up and attended school together in Marengo, Illinois, and they were close friends.

Around 8:45 p.m. on June 1, 2000, Sears was shot and killed near U.S. Highway 20 in Hampshire, Illinois. Am. Cplt. ¶¶ 10, 11. Sears was on duty at the time, and he had walked about fifteen feet away from his marked police car which was left parked on the shoulder of the road. *Id.* ¶ 10. Four persons working about 475 feet away from the shooting heard gunshots and saw the outline of Sears' police car but did not see Sears. *Id.* ¶ 12. Around 11:00 p.m., two of the workers investigated the scene, discovered Sears' body, and reported his death to the police. *Id.* ¶ 13. Within about ten minutes of the murder and for the rest of the night, Carroccia was in his home, about a forty-minute drive from the murder scene. *Id.* ¶ 14. Carroccia alleges that he had nothing to do with the murder and that he first learned of it the next day. *Id.* ¶ 15.

The Kane County Sheriff's Office and the Hampshire Police began their murder investigation on the evening of June 1, 2000, shortly after the crime was reported. *Id.* ¶ 17. At about 11:45 p.m., defendant Bumgarner interviewed the victim's wife, Norma Jean Sears. *Id.* ¶ 25. Though Mrs. Sears had a history of psychiatric treatment, owned several unregistered handguns, and stood to benefit financially from her husband's death, Bumgarner did not inquire into her possible involvement in the crime. *Id.* ¶ 25. Instead, Bumgarner sought Mrs. Sears' speculation as to other possible perpetrators. *Id.* His inquiries yielded the names of several Hampshire police officers, including defendant Malloy, but Carroccia's name was not mentioned. *Id.* The next day, however, Officer Malloy falsely identified Carroccia as a potential suspect,

telling investigative officers that Carroccia was a habitual traffic law offender and that he disliked Sears, and Malloy left the officers with the impression that Carroccia had threatened Sears. *Id.* ¶ 27. Later, Mrs. Sears falsely confirmed that there was friction between her husband and Carroccia, and she speculated that Carroccia was the murderer. *Id.* ¶ 28.

Sometime on June 2, 2000, Bumgarner and other police officers interviewed John Rogula, one of the workers who had heard the gunshots and discovered Sears' body. Though the Hampshire Police Department earlier had issued a press release identifying a "dark colored SUV" as a possible getaway car, Mr. Rogula was shown photographs of only one vehicle, Carroccia's van, which did not resemble the vehicle described in the press release. *Id.* ¶ 29. Rogula told police that the van "looked the same as" the vehicle at the murder scene: it was a full-sized, maroon-colored vehicle manufactured between 1987 and 1991. *Id.* ¶ 30. Despite poor visibility due to darkness, rain, and the considerable distance between the area where Rogula worked and the scene of the murder, Rogula also provided police with a description of the van's driver that resembled Carroccia. *Id.* ¶ 31. The interrogating officers did not determine whether Rogula's identification could be corroborated by his co-workers. *Id.* ¶ 33. Carroccia alleges that the officers relied on Rogula's statements as evidence against Carroccia notwithstanding Rogula's criminal history and his known willingness to accuse others of crimes in return for favorable treatment. *Id.* On the evening of June 2, 2000, without a warrant, and fewer than twenty-four hours after the crime had taken place, the police arrested Carroccia for Sears' murder. *Id.* ¶¶ 35-36.

After the arrest, police and investigators interviewed Carroccia for about two hours. *Id.* ¶ 43. Carroccia answered his interrogators' questions and denied that he had shot Sears. *Id.*

3

Officer Anderson's report of the interrogation, however, misrepresented certain of Carroccia's responses, making them appear suspicious or incriminating. *Id.* ¶ 44. On June 3, 2000, police officers and sheriff's office investigators conducted a search of Carroccia's home and vehicles. *Id.* ¶ 45. Lacking probable cause for the search, the officers obtained a warrant by submitting false information in the warrant affidavit. *Id.* No incriminating evidence was found in the search, but the officers destroyed some of Carroccia's property. Though the officers had keys to Carroccia's house, they entered his residence forcibly, causing several thousand dollars worth of damage. *Id.* ¶ 47.

Carroccia alleges that when the defendants provided the prosecutors with the results of their investigation, they concealed evidence tending to exculpate Carroccia. *Id.* ¶ 14. Principally, they did not advise the prosecutors that Mrs. Sears had a flawed alibi, that she did not have a normal reaction upon hearing of her husband's murder, that she had a large financial stake in her husband's death, and that she possessed firearms that she claimed to have used. *Id.* ¶ 42. They also failed to disclose the circumstances of Rogula's allegedly flawed photo identification of Carroccia's car. Am. Cplt. ¶ 38. Accepting as true the misleading and incomplete information provided by the defendants, on June 20, 2000, prosecutors presented the evidence to a grand jury, which indicted Carroccia for two counts of murder. *Id.* ¶ 48. After a jury trial in March 2002, he was acquitted on both counts.

Based on these allegations, Carroccia seeks to recover for wrongful prosecution and a series of related injuries. He has framed his actions against the defendants under federal and state law, asserting substantive claims under 42 U.S.C. § 1983 (Counts 1-5), conspiracy claims under 42 U.S.C. §§ 1983 and 1985 (Count 6), and Illinois state law claims for false arrest and

malicious prosecution (Count 7), conspiracy (Count 8), and intentional infliction of emotional distress (Count 9). Pursuant to 745 ILCS 10/9-102, Carroccia also seeks indemnification from Kane County and the Village of Hampshire for all torts allegedly carried out by their officers and investigators within the scope of their employment (Counts 10 and 11). Defendants Anderson and Bumgarner move to dismiss Counts 2-8. Defendants Malloy, Atchison and the Village of Hampshire move to dismiss Counts 1-9 and Count 11.

## Discussion

In their combined motions, defendants seek to dismiss all but one count of Carroccia's amended complaint. We will consider each count in turn, beginning with Carroccia's federal claims, which supply the basis of our jurisdiction over the case. In considering defendants' motions, we accept as true all facts alleged by Carroccia and draw reasonable inferences in his favor. *Hishon v. King & Spaulding,* 467 U.S. 69, 73 (1984); *Thompson,* 300 F.3d at 753.

### I.     Count 1 (§ 1983 False Arrest)

In Count 1 of the amended complaint, Carroccia asserts a claim for false arrest under 42 U.S.C. § 1983. He alleges that Anderson, Bumgarner, Atchison and Malloy willfully violated his Fourth, Fifth and Fourteenth Amendment rights by arresting him without probable cause. Atchison and Malloy move to dismiss this claim or, alternatively, to limit its scope. They first contend that Carroccia's allegations are too general, arguing that he fails to allege facts that would suggest that either defendant participated in or directed Carroccia's arrest. But Carroccia is entitled to plead "the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer," *Higgs v. Carter,* 286 F.3d 437, 439 (7th Cir. 2002), and his allegations are sufficient to state a claim against Malloy and Atchison. Carroccia alleges that

5

"Sheriff's employees and others arrested John Carroccia for murder," and that defendants "well knew" that "probable cause did not exist." Am. Cplt. ¶ 35. Elsewhere in the amended complaint, Malloy and Atchison are identified by name and are alleged to have arrested Carroccia without probable cause, and with "the intent and effect of ... depriving him of constitutionally protected rights." *Id.* ¶¶ 51, 53. These assertions are adequate to describe a cause of action under § 1983 and to put Malloy and Atchison on notice that they being sued for false arrest.

Defendants correctly observe, however, that a false arrest claim under § 1983 must be rooted in Fourth Amendment violations. *See McKinney v. George,* 726 F.2d 1183, 1187 (7th Cir. 1984) (explaining that if arrest is upheld when reviewed under Fourth Amendment standards, the arrested person cannot succeed by recasting his challenge in language of due process). For the sake of clarity, Carroccia's references to due process violations under the Fifth and Fourteenth Amendments are stricken from Count 1.

## II.    Count 2 (§ 1983 Unreasonable and Excessive Search and Seizure)

In Count 2 of the amended complaint, Carroccia asserts a § 1983 claim based on unlawful search and seizure. He states that the defendants searched his home without probable cause and wilfully and maliciously destroyed and damaged his property. Malloy and Atchison move to dismiss this claim, arguing that Carroccia fails to allege that either of them was involved in obtaining a search warrant or was present when Carroccia's home and vehicles were searched. Anderson and Bumgarner raise a similar objection, moving to dismiss on the grounds that Carroccia does not identify their personal involvement in the search. Though liability under § 1983 depends on personal involvement in an alleged constitutional violation, *Rascon v.*

6

*Hardiman,* 803 F.2d 269, 273 (7th Cir. 1986), "[a]n official satisfies the personal responsibility requirement of section 1983 ... if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir. 1985) (internal quotation marks omitted)). As Carroccia points out, Atchison, Anderson and Bumgarner were the lead investigators of Sears' murder, and they made decisions regarding the course of the investigation. Moreover, the amended complaint attributes the conduct and results of the search to the actions of each defendant, stating that Anderson, Bumgarner, Malloy, and Atchison "acted jointly and in concert, with the intent and effect of harming [Carroccia] and depriving him of constitutionally protected rights against unreasonable interferences with his property." Am. Cplt. ¶ 58. This general assertion is adequate to allege the defendants' involvement in the allegedly unlawful search. Carroccia need not establish each officer's role in the search at pleading stage.

As with Count 1, however, Carroccia's unlawful search claim can only be based on Fourth Amendment violations. *See McKinney,* 726 F.2d at 1187 (7th Cir. 1984) ("a seizure that passes muster under the Fourth Amendment should also satisfy the requirements of the due process clause viewed as an independent source of constitutional norms ..."); *see also Pasiewicz v. Lake County Forest Preserve District,* 270 F.3d 520, 524 (7th Cir. 2001) (collapsing Fourth and Fourteenth Amendment due process challenges into Fourth Amendment inquiry in §1983 search and seizure action). The references in Count 2 to Fifth and Fourteenth Amendment due process violations are immaterial to the claim and are therefore stricken.

### III.    Counts 3-5 (§ 1983 Right to Fair Trial)

In Counts 3-5, Carroccia asserts § 1983 claims based on the officers' and investigators'

alleged efforts to secure Carroccia's conviction by assembling false statements, misrepresenting

evidence, and concealing exculpatory information from prosecutors. Count 3 describes Fifth and

Fourteenth Amendment violations based on defendants' "malicious assembly and use of false an

misleading witness statements to inculpate [Carroccia]." Am. Cplt. ¶ 61. Count 4 asserts Fifth

and Fourteenth Amendment violations based on defendants' "intentional disregard of credible

investigative leads pointing to the guilt of a person other than [Carroccia]." *Id.* ¶ 66. Count 5

asserts Fifth and Fourteenth Amendment violations based on defendants' efforts to "conceal

exculpatory information from prosecutors" and "misadvise" them about investigative facts. *Id.* ¶

71. Defendants advance several arguments in support of their motions to dismiss these claims.

Foremost, they contend that none of these allegations state cognizable claims for due process

violations.

Carroccia alleges that defendants' efforts to conceal evidence and misrepresent facts to

the prosecutors deprived him of "constitutionally protected rights to due process." Am. Cplt. ¶¶

63, 68, 73. But "due process" has more than one meaning. As defendants point out, he cannot

recover for the investigative misconduct alleged by asserting *substantive* due process violations.

*Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2000) ("[c]laims of malicious prosecution

should be analyzed not under the substantive due process approach ... but under the language of

the Constitution itself ..."). Still, Carroccia's allegations support a claim based on procedural due

process, specifically, his right to a fair trial. *See id.* at 752 (citing *Brady v. Maryland*, 373 U.S.

83 (1963), and allowing a due process claim premised on the violation of the right to a fair trial

caused by police officers' withholding of material exculpatory evidence from prosecutors). The

only question is whether a criminal defendant acquitted at trial may nonetheless claim that

8

investigative misconduct compromised the integrity of the proceedings against him. Defendants contend that Carroccia's acquittal bars his due process claim. We disagree.

Though it has not considered a case involving an acquitted criminal defendant, the Seventh Circuit has recently explored the issue of due process claims based on malicious prosecution. *See Ienco v. City of Chicago*, 286 F.3d 994, 999-1000 (7th Cir. 2002); *Newsome*, 256 F.3d at 750-53. Emphasizing the duty of law enforcement officials to disclose material exculpatory information to prosecutors, *see Brady*, 373 U.S. at 87-88; *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988), the court explained that a plaintiff states a claim for malicious prosecution under § 1983 if he alleges that "officers withheld information or evidence necessary for the fair and impartial trial guaranteed by the U.S. Constitution." *Ienco*, 286 F.3d at 999, citing *Newsome*, 256 F.3d at 751-52. As an element of this type of claim, the plaintiff must show that the officers' omissions were material in *Brady* terms. In other words, there must be a "reasonable probability" that the exculpatory evidence withheld could have affected the outcome of the plaintiff's criminal trial. *See United States v. Bagley*, 473 U.S. 667, 682 (1985).

Defendants argue that Carroccia's acquittal makes it impossible to show the materiality of any of the evidence they allegedly concealed; because Carroccia was found not guilty, they argue, additional exculpatory evidence could not have produced a more favorable result at trial. In this regard, defendants rely on decisions in criminal appeals evaluating whether undisclosed evidence would have changed the result of a completed trial that resulted in a conviction. Such cases necessarily take a retrospective approach, looking at the record of the completed trial to assess the actual effect of the prosecutor's withholding of evidence. But that does not mean that a prosecutor's or police officer's compliance with *Brady* turns on whether the defendant ultimately

9

is convicted. To put it another way, a trial is not rendered fair simply because it ultimately results in an acquittal. As the Court stated in *Brady*, "our system of the administration of justice suffers when any accused is treated unfairly . . . . A prosecutor that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant." *Brady*, 383 U.S. at 87-88.[1]

*Brady* and its progeny impose a duty on prosecutors and police officers to produce evidence favorable to the accused where the evidence is material either to guilt or punishment. *Brady*, 373 U.S. at 87. To discharge this duty, law enforcement officials must make prospective judgments regarding the materiality of exculpatory evidence that comes to their attention. They must decide in advance of trial, and without knowing how the trial will come out, whether evidence favorable to the accused has a "reasonable probability" of affecting the outcome of the case. If courts prohibit a criminal defendant from making a civil claim for concealment of material exculpatory evidence simply because his trial resulted in an acquittal, we tolerate law enforcement misconduct simply because the defendant was able to overcome it by other means. In this Court's view, such an approach undermines the important interests protected by *Brady* and its progeny.

In this regard, the right to a fair trial is deserving of treatment similar to that given in *Carey v. Piphus*, 435 U.S. 247 (1978), to the right to procedural due process. In *Carey*, the Court

---

[1] In *Strickler v. Greene*, 527 U.S. 263 (1999) (a case not cited by defendants), the Supreme Court stated that "strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." *Id.* at 281. Again, however, the Court was discussing the retrospective standard for overturning a conviction due to a *Brady* violation, and its comments can be properly understood only in that context.

addressed a Chicago high school student's suspension without any opportunity for a hearing. The Court held that if the requirements of procedural due process had been violated, the student was entitled to prevail and recover nominal damages under § 1983 even if he would have been suspended after a proper hearing. *Id.* at 266-67. In other words, the existence of a due process violation giving rise to a civil action under § 1983 did not depend on whether the due process violation made a substantive difference in the ultimate decision. The Court noted that "'[i]t is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, *whatever the outcome of the hearing . . . .*'" *Id.* at 266 (quoting *Fuentes v. Shevin,* 407 U.S. 67, 87 (1972)) (emphasis added). The same is true of the even more substantial liberty interest that Carroccia had at stake when he faced trial for Sears' murder. As in *Carey,* "[b]y making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed . . . ." *Id.*

In sum, to determine in the context of a civil suit under § 1983 whether law enforcement breached its duty under *Brady,* the court must evaluate the officer's action on a prospective basis, not a retrospective one. The question is whether, at the time the evidence is concealed, it could be expected to affect the outcome of the case. An eventual acquittal may suggest that the withheld evidence was not material. But an acquittal alone does not show that police officers complied with *Brady* or that the defendant's trial was fair. As we have noted, an unfair trial can still – for completely independent reasons – result in an acquittal. The constitutional value at stake in *Brady* is due process: the means, not the ends of his trial. As the Court observed in *Brady,* "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair;

our system of the administration of justice suffers when any accused is treated unfairly." *Brady,* 373 U.S. at 87. If exculpatory evidence was wrongly withheld, Carroccia's acquittal did not eliminate the due process violation that had already occurred by the time of the acquittal.

Defendants point to the decision in *Gregory v. Oliver,* 226 F. Supp. 2d 943 (N.D. Ill. 2002), in which our respected colleague, United States District Judge Milton I. Shadur, granted summary judgment to the defendants on a § 1983 due process claim similar to Carroccia's. In *Gregory,* the court agreed with the argument that defendants urge us to adopt here – that acquitted criminal defendants cannot recover in civil suits for *Brady* violations. *Id.* at 953 (citing *United States v. Jackson,* 780 F.2d 1305, 1309-10 (7th Cir. 1986)). The court explained that evidence allegedly concealed from prosecutors during the plaintiff's criminal trial was not material in *Brady* terms because, since the plaintiff was acquitted, there was no reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed. *Id.* But *Gregory* addressed the issue of *Brady* materiality by focusing, retrospectively, on the outcome of the criminal defendant's trial. As our analysis indicates, we disagree with this approach. It is clear that a convicted defendant cannot obtain a new trial based on *Brady* violations unless he can show that the disclosure of unrevealed evidence creates a reasonable probability that the result of his trial would have been different. But an acquitted defendant seeking damages for *Brady* violations presents the question of materiality in a different posture. The court must ask whether the police withheld evidence that could have affected the outcome of the trial. Otherwise, the investigative misconduct that *Brady* condemns is tolerated so long as the defendant was able to overcome its effects.

For these reasons, Carroccia's allegations in Count 5 that defendants Anderson,

Bumgarner, Malloy and Atchison concealed exculpatory information from prosecutors and "misadvised" them about investigative facts states a claim under § 1983 for due process violations under the Fourteenth Amendment. Though we agree with the defendants that Carroccia cannot recover on this claim for his ten-day pre-trial incarceration, *Albright v. Oliver,* 510 U.S. 266, 273-75 (1994) (four-justice plurality; pretrial deprivations of liberty are the exclusive domain of the Fourth Amendment); *id.* at 281-86 (Kennedy, J., joined by Thomas, J., holding that due process does not provide a damage remedy in this context), he may recover nominal damages for alleged violations of his right to a fair trial.[2]

Counts 3 and 4, however, suffer from flaws that require their dismissal. In Count 3, Carroccia alleges that defendants assembled "false or misleading witness statements" "to establish probable cause" and that this violated his due process rights. As we have discussed, there is no due process right to prosecution without probable cause. *See Newsome,* 256 F.3d at 750. Though there is significant overlap between Count 3 and Counts 1 (the false arrest claim) and 5 (the *Brady* / fair trial claim), Count 3 contains nothing that would support a separate basis for recovery. It is therefore dismissed.

In Count 4, Carroccia alleges that defendants "intentionally failed to pursue" credible investigative leads that would have cast doubt on his involvement in the Sears murder. We agree with defendants that these allegations do not support a claim under § 1983. Under the Fourth Amendment, it is clear that police are not constitutionally obligated to pursue all investigative possibilities to establish probable cause. *See Gramenos v. Jewel Cos.,* 797 F.2d 432, 442 (7th Cir.

---

[2] If Carroccia prevails on his § 1983 claim, of course, he will also be entitled to recover attorney's fees under 42 U.S.C. § 1988.

1986) (police need not interview available witnesses "on pain of the risk that a jury will require them to pay damages"). And Carroccia points to no authority that supports a due process right to a full and complete police investigation. He was certainly entitled to an honest investigation, and to the extent that defendants concealed exculpatory evidence from prosecutors, the facts alleged in Count 4 may support the claim that he was denied his right to a fair trial. But Count 4 does not state a claim independent of Count 5 and therefore must be dismissed.

Finally, we reject the remaining arguments made by Malloy and Atchison with regard to Count 3. First, there is no merit to their contention that the heightened pleading standards of Rule 9(b) apply to Carroccia's civil rights claims. Rule 9(b) applies only to "averments of fraud or mistake," and does not apply generally to allegations of intentional wrongdoing as defendants contend. *See Leatherman v. Tarrant Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993). We also reject defendants' argument that available state court remedies bar Carroccia's due process claims. Defendants contend that the availability of Illinois tort law actions for false arrest, false imprisonment and malicious prosecution provides Carroccia with "all the process he is due." Malloy / Atchison Mem. at 9; *see generally Hudson v. Palmer,* 468 U.S. 517 (1984); *Parratt v. Taylor,* 451 U.S. 527 (1981). But the state law actions defendants identify offer no remedy for the *Brady* violations that form the basis of Carroccia's §1983 due process claims. To state a claim for false arrest, for example, the plaintiff must allege that he was restrained without reasonable grounds to believe that he committed an offense. *Meerbrey v. Marshall Field & Co.,* 139 Ill. 2d 455, 474, 564 N.E.2d 1222, 1231 (1990). Malicious prosecution claims require allegations that the defendants commenced or continued criminal proceeding against the plaintiff without probable cause. *Joiner v. Benton Community Bank,* 82

Ill. 2d 40, 45, 411 N.E.2d 229, 232 (1980).  Under *Newsome,* however, Carroccia's due process claims are not premised on allegations of false charges or unreasonable arrest or pretrial detention.  Rather, his claims arise from allegations that defendants concealed exculpatory evidence from prosecutors, denying him the right to a fair trial.  Because defendants have identified no state law remedy that addresses Carroccia's particular due process claim, he cannot be precluded from asserting a constitutional tort claim on this basis.  *Cf. Newsome,* 256 F.3d at 752 (holding that available state law remedy for malicious prosecution bars due process claim for prosecution without probable cause but acknowledging viability of a § 1983 claim based on *Brady* violations).

## IV.   Count 6 (Conspiracy Under §§1983 and 1985)

In Count 6, Carroccia alleges that defendants Anderson, Bumgarner, Atchison and Malloy, along with John Rogula, a witness against Carroccia, "knowingly conspired and agreed with each other ... to deprive the plaintiff of his constitutional rights" under the Fifth and Fourteenth Amendments.  Am. Cplt. ¶ 76.  In the amended complaint, Carroccia asserts this claim under both 42 U.S.C. §1983 and 42 U.S.C. § 1985.  Because he has now withdrawn his claim under § 1985, *see* Pl. Resp. to Anderson / Bumgarner Mot. at 7, we need only consider the sufficiency of his allegations under §1983.

Defendants advance three arguments in support of their motions to dismiss.  The first is rendered moot by our denial of defendants' motion to dismiss Count 5.  Insisting on Carroccia's failure to state a due process violation, defendants contend that his constitutional conspiracy claim is doomed as well.  *See Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996) (no constitutional violation in conspiring to cover up an action which does not itself violate the constitution).  But

Carroccia has stated a due process claim in Count 5, so his conspiracy claim cannot be dismissed on those grounds.

Defendants next argue that the allegations in Count 6 are too vague. They contend that Carroccia fails to allege an agreement between the parties to the conspiracy and makes no assertion regarding the roles of each defendant in carrying out a plan. Pleading conspiracy, however, simply requires the plaintiff "to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). Carroccia identifies each individual defendant as part of the conspiracy and alleges that they agreed to violate his due process rights. Am. Cplt. ¶ 76. Elsewhere in the amended complaint, he describes defendants' alleged efforts to falsify, conceal and misrepresent evidence in order to facilitate Carroccia's conviction. *Id.* ¶¶ 40-41. Further, he identifies each defendant's involvement in some aspect of an allegedly corrupt investigation. *See id.* ¶ 27 (Malloy created false impression of Carroccia's guilt), ¶ 30 (Rogula and Bumgarner fabricated evidence against Carroccia), ¶¶ 43-44 (Anderson and Atchison interrogated Carroccia; Anderson maliciously misrepresented Carroccia's responses). Defendants are clearly on notice that they are charged with conspiracy to provide prosecutors with false and misleading evidence of Carroccia's guilt. This is adequate under federal pleading standards.

Defendants Malloy and Atchison advance a third reason why Count 7 should be dismissed. They point out that police officers are immune from civil claims of conspiracy to present false testimony. *House v. Belford,* 956 F.2d 711 (7th Cir. 1992). But the officers' testimonial immunity does not shield them generally from liability for misleading prosecutors and concealing exculpatory evidence. *See Newsome v. McCabe*, 319 F.3d 301, 304-05 (7th Cir.

16

2003) (*"Newsome II"*); *Ienco v. City of Chicago*, 286 F.3d 994, 1000 (7th Cir. 2002) ("[n]either the withholding of exculpatory evidence nor the initiation of constitutionally infirm proceedings is protected by absolute (testimonial) immunity"); *Manning v. Dye,* No. 02 C 372, 2003 WL 145423, at *2-3 (N.D. Ill. Jan. 21, 2003). Carroccia may not pursue a claim that defendants conspired with one another to commit perjury, but he is entitled to allege that they concealed "information vital to probe whether manipulation (of evidence) occurred" during the murder investigation. *Newsome II,* 319 F.3d at 305.

## V.     Count 7 (False Arrest and Malicious Prosecution)

Carroccia has withdrawn the common law false arrest claim alleged in Count 7. Malloy and Atchison's statute of limitations argument with respect to that claim is therefore moot. We are left to address defendants' contention that Count 7 is insufficient to state a claim as against them for malicious prosecution. Citing the Illinois Local Governmental Tort Immunity Act, 745 ILCS 10/2-204 ("a public employee ... is not liable for an injury caused by the act or omission of another person"), Malloy and Atchison insist that they cannot be held liable for each other's actions or those of the other defendants. They further contend that the amended complaint lacks factual allegations that would demonstrate their personal involvement in the alleged malicious prosecution. It appears that Carroccia may be required to prove individualized wrongdoing to prevail on the merits. But he does not need to allege details of individual misconduct to state a claim. In Count 7, Carroccia states that Malloy and Atchison "maliciously recommended and caused the prosecution of the plaintiff" in violation of Illinois common law. Am. Cplt. ¶ 80. He further alleges that Atchison was a "leading investigator" in the case involved directly in Carroccia's interrogation, and that Malloy maliciously provided investigators with a false basis to

17

suspect Carroccia. *Id.* ¶¶ 4, 43, 27. And he alleges that all defendants "intentionally and maliciously concealed from prosecutors evidence that tended to exculpate the plaintiff." *Id.* ¶ 40. At the pleading stage this is sufficient.

## VI. Count 8 (Common Law Conspiracy–False Arrest, "Wrongful Conviction," Malicious Prosecution)

Carroccia has withdrawn his common law conspiracy claims as they relate to his allegations of false arrest and "wrongful conviction" (an evident misnomer in any event given Carroccia's acquittal).[3] This leaves a single claim for conspiracy to conduct malicious prosecution, which Malloy and Atchison move to dismiss. Defendants renew their objection, aimed at the § 1985 conspiracy claim in Count 6, that Carroccia's conspiracy allegations are too vague. As we discussed with respect to Count 6, however, Carroccia has placed the defendants on adequate notice of a charge of conspiracy to mislead prosecutors about his guilt. The allegation that defendants "knowingly conspired and agreed with each other" to deprive Carroccia of his rights to due process under the Illinois Constitution and United States Constitution, along with facts alleged elsewhere in the amended complaint, *see* Section IV *supra,* is sufficient to state a claim under Illinois law. *See Small v. Sussman,* 306 Ill. App. 3d 639, 647, 715 N.E.2d 1216, 1222 (1999) (pleading conspiracy requires allegation of "agreement or combination of two or more people or entities to do an unlawful act or to do a lawful act by unlawful means").

## VII. Count 9 (Intentional Infliction of Emotional Distress ("IIED"))

Defendants Malloy and Atchison next attack the sufficiency of Carroccia's claim for

---

[3] Malloy and Atchison's argument that Carroccia's false arrest conspiracy claim is time-barred is therefore moot.

intentional infliction of emotional distress. But their objections simply echo those we have rejected in connection with the claim for malicious prosecution. Though Carroccia must identify conduct by Malloy and Atchison that constitutes intentional infliction of emotional distress, he need not allege details. As we have discussed, the amended complaint adequately alleges that these defendants played significant roles in a corrupt investigation. If, as alleged, defendants fabricated false or misleading evidence of Carroccia's guilt or concealed exculpatory evidence from prosecutors, that behavior is sufficiently "outrageous" to support a claim for intentional infliction of emotional distress. *See Treece v. City of Naperville*, 903 F. Supp. 1251, 1259 (N.D. Ill. 1995), *aff'd,* 213 F.3d 360 (7th Cir. 2000).

Malloy and Atchison also contend that Carroccia's claim for intentional infliction of emotional distress is time-barred. They argue that the one-year statute of limitations provided by 745 ILCS 10/8-101 began to run in 2000, two years before the case was filed, when defendants are alleged to have misled prosecutors about the Sears investigation, and when, according to defendants, Carroccia's first alleged injury occurred. We disagree. As defendants acknowledge, courts in this district have consistently held that IIED claims based on facts alleged in parallel claims for malicious prosecution accrue only when state criminal proceedings are terminated. *See Castillo v. Zuniga,* No. 01 C 616, 2002 WL 398519, at *12 (N.D. Ill. Mar. 14, 2002); *Evans v. City of Chicago*, No. 00 C 7222, 2001 WL 1028401, at *14 (N.D. Ill. Sept. 6, 2001); *Treece,* 903 F. Supp. at 1259. We are not persuaded that the Seventh Circuit's decision in *Leavell v. Kieffer,* 189 F.3d 492, 495-96 (7th Cir. 1999), establishes a different rule. That case involved an untimely *Bivens* action based on the allegedly outrageous testimony of a federal auditor during tax court proceedings. *Id.* Although the court applied the "first injury" rule to assess the accrual

19

of an IIED claim, the claim did not depend on allegations of wrongful prosecution, and the court did not decide when such a claim might accrue. Because this case was commenced on May 31, 2002, within a year of Carroccia's acquittal, his claim for IIED based on malicious prosecution is timely.

## VIII.  Count 11 (Indemnification)

In Count 11, Carroccia seeks indemnification from the Village of Hampshire for torts committed by Officers Malloy and Atchison within the scope of their employment. *See* 745 ILCS 10/9-102. Hampshire moves to dismiss this claim pursuant to 745 ILCS 10/2-109, which provides that: "[a] local public entity is not liable for any injury resulting from an act or omission of its employee where its employee is not liable." But this argument depends on a finding that Malloy and Atchison have no liability in tort. For now, Carroccia's intention to seek indemnification states a claim.

## IX.  Punitive Damages

Finally, Carroccia's amended complaint includes a request for punitive damages. He seeks this relief generally, without reference to his entitlement to punitive damages under any particular claim alleged. *See* Am. Cplt., p. 18. Malloy and Atchison have moved to limit his theory of recovery, contending that police officers are immune to claims for punitive damages in connection with state law actions for malicious prosecution and that punitive damages are unavailable for claims of intentional infliction of emotional distress. Defendants further insist that Carroccia cannot recover punitive damages under § 1983 to the extent that he seeks to hold them liable for conduct committed in their official capacities as police officers.

Carroccia concedes that punitive damages are unavailable under a theory of intentional

infliction of emotional distress, and he therefore withdraws his request for punitive damages in connection with Count 9. As for the § 1983 claims, it is clear that Carroccia may not recover punitive damages against the Village of Hampshire or Kane County. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). But he can seek punitive damages from Malloy and Atchison in their individual capacities on a showing of reckless indifference to his rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). With regard to Carroccia's state law claims, defendants rely on a state statute that they claim bars punitive damages against public officials for claims arising from their acts or omissions while serving in an executive capacity. 745 ILCS 10/2-102. One court in this district has read this statute to bar state law claims against police officers for punitive damages. *See Reese v. May*, 955 F. Supp. 869, 877 (N.D. Ill. 1996). The questions posed by defendants' argument are difficult, and they concern a statute that "is not a model of clarity," *id.* at 873, and that, as best as we can tell, has never been interpreted in this regard by an Illinois court. Because the parties have spent so little time on the issue – just one sentence in defendants' brief and no discussion in plaintiff's – the Court believes that the matter is best left for consideration at the summary judgment stage.

### Conclusion

For the reasons stated above, the Court grants defendants' motions to dismiss [docket items 20-1 and 26-1] as to Counts 3 and 4 of the amended complaint. The motions are otherwise denied. Defendants are ordered to answer the remaining claims on or before March 25, 2003.

MATTHEW F. KENNELLY
United States District Judge

Date: March 11, 2003

21